134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ion SOFINET, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 97-2307.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 19, 1998.*
Decided Jan. 6, 1998.
 
 Before FAIRCHILD, CUMMINGS and MANION, Circuit Judges.
 
 ORDER
 
 1
 Ioan Sofinet is a 49-year-old Romanian citizen of Ukrainian descent He appeals from the decision of the Board of Immigration Appeals (BIA) which denied his request for asylum or withholding of deportation. We affirm
 
 
 2
 Under the regime of Romania's Communist dictator Nicolae Ceausescu, because Sofinet was a Ukrainian, he was not permitted to receive a high school education or to serve in the armed forces or the police, his obligation of military service was performed in construction sites doing hard labor. And Sofinet was prohibited from practicing his religion (Roman Catholicism) publicly, although Orthodox Christians could publicly worship. In 1981, Sofinet's sister fled Romania to Yugoslavia, and because of her escape, the Romanian security police interrogated Sofinet repeatedly, often for three or four hours. In 1982, Sofinet also attempted to escape, but he was caught by Romanian border police, who beat him into unconsciousness; Sofinet's jaw was broken during this beating. During the three weeks that the police detained Sofinet, they beat and interrogated him regularly. Even after he was released, he still was interrogated three or four times a week, often in the middle of the night. This went on until December of 1989, when the Ceausescu regime was overthrown. In 1990, the new Romanian government issued Sofinet a passport and allowed him to depart the county.
 
 
 3
 Sofinet traveled to the United States on a visitor's visa, which he overstayed. The government initiated deportation proceedings, and a hearing was held before an Immigration Judge on March 22, 1995. Sofinet sought asylum and withholding of deportation, claiming that he had suffered past persecution in Romania. The Immigration Judge denied Sofinet's application for asylum because he concluded that Sofinet had not proven past persecution. On appeal, the BIA reversed this finding, concluding that Sofinet's treatment had amounted to persecution. But past persecution does not necessarily entitle an alien, to asylum it merely creates a rebuttable presumption of future persecution. See Vaduva v. INS, No. 97-1931 (7th Cir December 15, 1997). The BIA in this case concluded that the changed circumstances in Romania sufficiently rebutted this presumption. The BIA also concluded that Sofinet's past persecution was not so severe that it would be inhumane to return him to Romania. We review the BIA's factual determination is under the "substantial evidence" standard Bereza v. INS, 115 F.3d 468, 473 (7th Cir.1997). We may reverse the BIA's conclusion only if the evidence compels a different result Borca v. INS, 77 F.3d 210, 214 (7th Cir1996).
 
 
 4
 The presumption of a well-founded fear created in Sofinet's favor due to his past persecution was rebutted by the government's evidence, which included a 1994 Department of State profile on Romania, which indicated that conditions in Romania had substantially changed for the better. This profile stated that "Romania has been profoundly transformed since the overthrow of the dictator Ceausescu in 1989," and that while many Romanians still seek better economic conditions, civil liberties are respected on the national level. For instance, the right to emigrate and return is constitutionally protected and respected in practice, as evidenced by the fact that Sofinet was allowed to leave the country legally in 1990. In response to the government's evidence, Sofinet did not present any current evidence showing that things have not changed. See Vaduva, op at 4 (noting that outdated reports of persecution in Romania did not rebut the government's evidence of present changed conditions). Because Sofinet failed to counter the government's evidence, we conclude that substantial evidence supported the BIA's finding that the government had rebutted the presumption of future persecution.
 
 
 5
 Even absent a well-founded fear of future persecution, past persecution may provide a basis for asylum if returning the alien to his former country could be inhumane. Bucur v. INS, 109 F.3d 399, 404-05 (7th Cir.1997). The applicant must show that the past experiences were so terrible and so "sear[ed] [that] person with distressing associations with his native country that it would be inhumane to force him to return there, even though he is in no danger of further persecution." Bereza, 115 F.3d at 472 (citation omitted). One cannot deny that the mistreatment that Sofinet suffered under the Ceaucescu regime was serious. But the mistreatment was not so sever that the BIA abused its discretion in declining to grant Sofinet asylum for humanitarian reasons. See Vaduva, op. at 2-3 (affirming return of Romanian who had been beaten by anti-democracy forces in Romania a full three years after the fall of the Ceausescu regime).
 
 
 6
 For these reasons, we affirm the decision of the BIA.
 
 
 
 *
 After an examination of the briefs and the record we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P.34(a), Cir R. 34(f)